**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

EARL WINGFIELD,

      Plaintiff,

v.                                        CASE NO.: 8:25-cv-00310

SECO HOLDINGS LLC,
d/b/a Seco South,

      Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, EARL WINGFIELD, (hereinafter "Plaintiff" or "Mr. Wingfield"), by and through the undersigned counsel, files this Complaint and Demand for Jury Trial against Defendant, SECO HOLDINGS LLC d/b/a Seco South, (hereinafter "Seco"), and alleges:

**JURISDICTION AND VENUE**

1. This is a civil action under federal law by Plaintiff against his former employer for monetary damages, declaratory relief and for other equitable relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA").

2. This Court has jurisdiction over Plaintiff's Title VII claims under 28 U.S.C §§ 1331 and 1334.

3. The claims that arise under state law arise out of the same nexus of operative facts, and this Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Pinellas County, which is located within the Middle District of Florida.

## PARTIES

5. Plaintiff, EARL WINGFIELD, is male who resides in Pinellas County, Florida, located in the Middle District of Florida.

6. Defendant, SECO HOLDINGS LLC d/b/a Seco South, is a Florida Limited Liability Company principally located at 2111 34th Way, Largo, Florida 33771.

7. Plaintiff has satisfied all conditions precedent to bringing this action.

## GENERAL ALLEGATIONS

8. Earl Wingfield is an African American male.

9. In April 2022, Seco hired Mr. Wingfield as a Floater. As part of his job duties, Mr. Wingfield was tasked with welding, installing glass, and polishing materials.

10.    In and around April 2023, Mr. Wingfield heard from several of his coworkers that management at Seco was trying to find any reason to terminate him.

11.    Specifically, Phil Shonfelt (Former Lead Welder – White male) told Mr. Wingfield that upper management employees, including Scott LNU (Manager – White male), regularly made racist remarks about Mr. Wingfield behind closed doors.

12.    In and around mid-June 2024, Mr. Wingfield left the jobsite to use the restroom at the RaceTrac gas station across the street because the porta-potties at the jobsite had not been working.

13.    Before Mr. Wingfield left the job site, he asked Gabriel Ayers (Shop Hand – White male) permission to temporarily leave the job site to use the restroom across the street. Mr. Ayers allowed Mr. Wingfield to do so.

14.    Despite this, when Jason Ogburn (Lead Field Installer – White male) told Tim Fowler (Field/Shop Operations Manager – White male) that Mr. Wingfield had left the job site to use the restroom, Mr. Fowler called Ms. Wingfield and sent him back to the shop early and wrote him up for job abandonment.

15.    By contrast, when Mr. Wingfield and Mr. Ogburn worked jobs in and around Middleton or Wildwood, Florida, Mr. Ogburn often took the company vehicle to visit his girlfriend in Pinellas County. Mr. Ogburn often stayed the night at his girlfriend's house and returned to work late or was not present at work at the

time that he was required to be there. Meanwhile, Mr. Fowler did not write Mr. Ogburn up for this.

16. In and around July 1, 2024, Mr. Ayers and Mr. Wingfield were driving back to the shop after completing a job in Largo.

17. On the way back, they stopped at a mutual friend's house to pick up marijuana.

18. Mr. Ayers and Mr. Wingfield smoked marijuana in the company van.

19. Marijuana use was common among Seco employees while still on the clock. In fact, none of the employees were ever disciplined or terminated for smoking marijuana on the job.

20. The following day, on July 2, 2024, Mr. Ogburn told Dino Giancola (COO – White male) that Mr. Wingfield and Mr. Ayers had bought marijuana from a mutual friend and smoked it together the day before.

21. Mr. Giancola and Mr. Fowler then approached Mr. Ayers to confirm this occurrence. Mr. Ayers admitted that he and Mr. Wingfield had smoked marijuana.

22. Mr. Giancola decided to terminate Mr. Wingfield while continuing to employ Mr. Ayers even though Mr. Ayers accompanied Mr. Wingfield to pick up the marijuana and smoked it with Mr. Wingfield.

23.    Again, Mr. Wingfield tried to explain the situation to Mr. Giancola and told him that his decision to terminate Mr. Wingfield alone was unfair because both him and Mr. Ayers smoked marijuana together.

24.    Mr. Wingfield even told Mr. Giancola that Mr. Ogburn often smoked marijuana and used Kratom (an herbal substance commonly used as a sedative) openly on the job without related consequences.

25.    Nevertheless, Mr. Giancola only terminated Mr. Wingfield and refused to terminate either Mr. Ayers or Mr. Ogburn.

26.    Mr. Wingfield has incurred attorney fees and costs in bringing this matter.

**COUNT I**
**VIOLATION OF TITLE VII**
**DISCRIMINATION RESULTING**
**IN A HOSTILE WORK ENVIRONMENT**
**ON THE BASIS OF RACE AND COLOR**

27.    Plaintiff, EARL WINGFIELD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-six (26) as if set forth fully herein.

28.    Defendant is an "employer" within the meaning of Title VII.

29.    Mr. Wingfield is an "employee" of Defendant within the meaning of Title VII.

30.    Mr. Wingfield is a member of a protected class because of his race and color, and therefore, is protected by Title VII.

31.    Mr. Wingfield was qualified to perform his job duties.

32.    Mr. Wingfield's White managers regularly made racist remarks about him and repeatedly and unfairly favored his White peers over Mr. Wingfield because of his race and color.

33.    Specifically, Mr. Wingfield's White managers falsely wrote Mr. Wingfield up for job abandonment even though—on the day in question—he asked for and received permission to leave. Mr. Wingfield's White managers did this because they inappropriately relied on a White employee's false complaint that Mr. Wingfield had allegedly left the job site without permission.

34.    Mr. Wingfield's White managers also unfairly favored his White coworkers because when he and a White coworker were accused of smoking marijuana on the job, Defendant chose only to terminate Mr. Wingfield.

35.    Following this incident, Defendant allowed its White managers to publicly criticize and single out Mr. Wingfield in front of his coworkers while allowing his White counterpart, who was also accused of smoking marijuana to escape criticism.

36.    The discriminatory conduct described herein was severe and pervasive and subjected Plaintiff to a work environment that was intimidating, hostile, and

offensive. This hostile work environment detrimentally interfered with Plaintiff's ability to perform his job duties.

37.     Defendant's actions in subjecting Mr. Wingfield to a hostile work environment because of his race and color were reckless, willful, and malicious.

38.     As a direct and proximate result of Defendant's acts, Mr. Wingfield has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Wingfield has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Wingfield respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Wingfield;

B.     Back pay;

C.     Front pay;

D.     Compensatory damages against Defendant;

E.     Punitive damages;

F.     Prejudgment interest;

G.     Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

H.    Attorney's fees and costs; and

I.    For such other relief as the Court deems just and equitable.

**COUNT II**
**VIOLATION OF TITLE VII**
**FOR DISCRIMINATION RESULTING IN**
**ADVERSE EMPLOYMENT ACTION ON THE BASIS OF**
**RACE AND COLOR**

39.    Plaintiff, EARL WINGFIELD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-six (26) as if set forth fully herein.

40.    Defendant is an "employer" within the meaning of Title VII.

41.    Mr. Wingfield is an "employee" of Defendant within the meaning of Title VII.

42.    Ms. Wingfield is a member of a protected class because of his race and color, and therefore, is protected by Title VII.

43.    At all times material, Mr. Wingfield is qualified to perform his job duties.

44.    On July 2, 2024, Defendant terminated Mr. Wingfield because of his race and color.

45.    Defendant's actions in terminating Mr. Wingfield because of his race and color were reckless, willful, and malicious.

46.     As a direct and proximate result of Defendant's acts, Mr. Wingfield has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Wingfield has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Wingfield respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

A.     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Wingfield;

B.     Back pay;

C.     Front pay;

D.     Compensatory damages against Defendant;

E.     Punitive damages;

F.     Prejudgment interest;

G.     Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

H.     Attorney's fees and costs; and

I.     For such other relief as the Court deems just and equitable.

## COUNT III
### VIOLATION OF TITLE VII
### RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY
### RESULTING IN ADVERSE EMPLOYMENT ACTION

9

## ON THE BASIS OF RACE AND COLOR

47.    Plaintiff, EARL WINGFIELD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-six (26) as if set forth fully herein.

48.    Mr. Wingfield is a member of a protected class and protected by Title VII from discrimination based on his race and color.

49.    Shortly before he was terminated, Mr. Wingfield engaged in protected activity when he complained to his manager that Defendant's decision to solely terminate him and not terminate his White counterpart was because of his race and color.

50.    Nevertheless, on July 2, 2024, Defendant terminated Mr. Wingfield because of his complaints of discrimination based on his race and color.

51.    The actions of the Defendant constitute a violation of Title VII in that the Defendant has retaliated against Mr. Wingfield for his complaints to HR that he was subjected to discrimination based on his race and color.

52.    Mr. Wingfield's protected activity was a but-for cause of his termination, and resulting injury.

53.    Defendant acted with intent, malice and reckless disregard for Mr. Wingfield's protected rights when it terminated him because of his reports of discrimination based on his race and color.

54. As a direct and proximate result of Defendant's acts, Mr. Wingfield has suffered loss of employment compensation due to his termination and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Wingfield has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Wingfield respectfully invokes the remedial powers of this Court as provided in Title VII and prays for a judgment:

A. Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Wingfield;

B. Back pay;

C. Front pay;

D. Compensatory damages against Defendant;

E. Punitive damages;

F. Prejudgment interest;

G. Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

H. Attorney's fees and costs; and

I. For such other relief as the Court deems just and equitable.

<u>**COUNT IV**</u>
**<u>VIOLATION OF THE FCRA</u>**

11

**FOR DISCRIMINATION RESULTING IN
A HOSTILE WORK ENVIRONMENT
ON THE BASIS OF RACE AND COLOR**

55.    Plaintiff, EARL WINGFIELD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-six (26) as if set forth fully herein.

56.    The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's race and color.

57.    Mr. Wingfield has satisfied all procedural and administrative requirements set forth in the FCRA.

58.    Mr. Wingfield is a member of a protected class because of his race and color, and therefore, is protected by the FCRA.

59.    Mr. Wingfield is qualified to perform his job duties.

60.    Mr. Wingfield's White managers regularly made racist remarks about him and repeatedly and unfairly favored his White peers over Mr. Wingfield because of his race and color.

61.    Specifically, Mr. Wingfield's White managers falsely wrote Mr. Wingfield up for job abandonment even though—on the day in question—he asked for and received permission to leave. Mr. Wingfield's White managers did this

because they inappropriately relied on a White employee's false complaint that Mr. Wingfield had allegedly left the job site without permission.

62. Mr. Wingfield's White managers also unfairly favored his White coworkers because when he and a White coworker were accused of smoking marijuana on the job, Defendant chose only to terminate Mr. Wingfield.

63. Following this incident, Defendant allowed its White managers to publicly criticize and single out Mr. Wingfield in front of his coworkers while allowing his White counterpart, who was also accused of smoking marijuana to escape criticism.

64. The discriminatory conduct described herein was severe and pervasive and subjected Plaintiff to a work environment that was intimidating, hostile, and offensive. This hostile work environment detrimentally interfered with Plaintiff's ability to perform his job duties.

65. Defendant's actions in subjecting Mr. Wingfield to a hostile work environment because of his race and color were reckless, willful, and malicious.

66. As a direct and proximate result of Defendant's acts, Mr. Wingfield has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Wingfield has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Wingfield respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Wingfield;

B.    Back pay;

C.    Front pay;

D.    Compensatory damages against Defendant;

E.    Punitive damages;

F.    Prejudgment interest;

G.    Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

H.    Attorney's fees and costs; and

I.    For such other relief as the Court deems just and equitable.

## COUNT V
## VIOLATION OF THE FCRA
## FOR DISCRIMINATION RESULTING IN
## ADVERSE EMPLOYMENT ACTION
## ON THE BASIS OF RACE AND COLOR

67.    Plaintiff, EARL WINGFIELD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-six (26) as if set forth fully herein.

68.    Defendant is an "employer" within the meaning of the FCRA.

14

69.    Mr. Wingfield is an "employee" of Defendant within the meaning of the FCRA.

70.    Mr. Wingfield is a member of a protected class because of his race and color, and therefore, is protected by the FCRA.

71.    Mr. Wingfield is qualified to perform his job duties.

72.    On July 2, 2024, Defendant terminated Mr. Wingfield because of his race and color.

73.    Defendant's actions in terminating Mr. Wingfield because of his race and color were reckless, willful, and malicious.

74.    As a direct and proximate result of Defendant's acts, Mr. Wingfield has suffered loss of employment compensation and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Wingfield has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Wingfield respectfully invokes the remedial powers of this Court, as provided in the FCRA, and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Wingfield;

B.    Back pay;

C.    Front pay;

D.    Compensatory damages against Defendant;

E.    Punitive damages;

F.    Prejudgment interest;

G.    Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

H.    Attorney's fees and costs; and

I.    For such other relief as the Court deems just and equitable.

**COUNT VI**
**VIOLATION OF THE FCRA**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY**
**RESULTING IN ADVERSE EMPLOYMENT ACTION**
**ON THE BASIS OF RACE AND COLOR**

75.    Plaintiff, EARL WINGFIELD, re-alleges and incorporates by reference the allegations set forth in paragraphs one (1) through twenty-six (26) as if set forth fully herein.

76.    Mr. Wingfield is a member of a protected class and protected by the FCRA from discrimination based on his race and color.

77.    Shortly before he was terminated, Mr. Wingfield engaged in protected activity when he complained to his manager that Defendant's decision to solely terminate him and not terminate his White counterpart was because of his race and color.

78.    Nevertheless, on July 2, 2024, Defendant terminated Mr. Wingfield because of his complaints of discrimination based on his race and color.

79.    The actions of the Defendant constitute a violation of the FCRA in that the Defendant has retaliated against Mr. Wingfield for his complaints to HR that he was subjected to discrimination based on his race and color.

80.    Mr. Wingfield's protected activity was a but-for cause of his termination, and resulting injury.

81.    Defendant acted with intent, malice and reckless disregard for Mr. Wingfield's protected rights when it terminated him because of his reports of discrimination based on his race and color.

82.    As a direct and proximate result of Defendant's acts, Mr. Wingfield has suffered loss of employment compensation due to his termination and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Wingfield has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Wingfield respectfully invokes the remedial powers of this Court as provided in the FCRA and prays for a judgment:

A.    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Wingfield;

17

B.      Back pay;

C.      Front pay;

D.      Compensatory damages against Defendant;

E.      Punitive damages;

F.      Prejudgment interest;

G.      Damages in compensation for the value of employment benefits he would have received but for the discriminatory acts and practices of Defendant;

H.      Attorney's fees and costs; and

I.      For such other relief as the Court deems just and equitable.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff respectfully requests a trial by jury.

Dated this 7th day of February, 2025.

*/s/ Gary L Printy, Jr, Esq*
**Gary L. Printy, Jr**
Florida Bar No. 41956
**PRINTY LAW FIRM**
5407 N Florida Ave.
Tampa, Florida 33604
Telephone (813) 434-0649
FAX (813) 423-6543
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Lead Counsel for Plaintiff*
